The next matter, number 24-1843, Gabrielle Garavanian et al. v. JetBlue Airways Corporation et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. Yes, good morning, Your Honor. Stephen Larson for the plaintiff. Ellen, along with my co-counsel, Joseph Alioto. Your Honor, I reserve three minutes for rebuttal, if I might. You have a ten-minute argument, so I will give you two minutes in rebuttal. Thank you, Your Honor. So may it please the Court. In this case, Your Honor, the plaintiffs were a substantially prevailing party. Indeed, I would submit, the prevailing party. And therefore, under Title 15 of the United States Code, Section 26, are entitled to the costs and fees in bringing, maintaining the lawsuit, and obtaining the result that the lawsuit did. We submit that the District Court erred when it found, in essentially a one-sentence Ipsich-Dixit ruling, that the plaintiffs in, quote, no sense were the plaintiffs in prevailing party. So what test do you want us to use to figure this out? I'm sorry? Your brief was not clear or did not take a position, really, on what test we should use to figure it out. I'd like to know what we decide on. Right. Neither the Supreme Court nor the First Circuit has adopted a test. We submit that the plain language of this statute, coupled with the congressional intent, coupled with the manner in which the Supreme Court has interpreted this statute going back to the 1950s, clearly establishes the test, if you would. We prevailed. We obtained the result, the entire result. You're leaving a word out of that. Party. Right? You're not a party to this case that resulted in the judgment. So you could tell me you prevailed, but that's not the whole thing. I mean, that's no test. But anyway, we can do that for a while. Prevailing party. What makes you a party? I would say there are two words left out. Party and then substantially, right? Right. There are two elements. We are a substantially prevailing party. We were a party to the litigation. This was the anti-merger litigation. The way the Clayton Act is set up. There are two cases. They have two docket numbers. There's a judgment. The one that has the judgment is not yours. Why are you a party? We are a party because the parties, the plaintiffs themselves, and that's what we're focusing on. It's not the lawyers. It's the parties. It's Mr. Garibarian. I follow you. And he had a case number, right? And he had a case number, Your Honor. But this is putting form over substance. The district court essentially consolidated these cases. They consolidated for purposes of the actual decision that was rendered in this case, the judgment. The court cited that the case itself, the beneficiaries of the case, the parties that benefited from this are the customers, the spirit customers. And then he consolidated. They were the ones that could enforce this injunction. Under Rule 71 of the Federal Rules of Civil Procedure, they have the ability to enforce this injunction. I'm sorry. You're arguing that your clients have an ability to enforce the injunction in the JetBlue case?  Both under the Clayton Act, under Section 5 of the Clayton Act, and under Rule 71 of the Federal Rules of Civil Procedure. In that sense, those parties are prevailing. Keep in mind the history here. But were any of those plaintiffs named or referred to in the order? They were expressly named in the court's order on the motion for summary judgment and cited as the actual customers. And then, frankly, the last line of the order that was done, you know, this one's for you, the spirit customers. The entire sense of the order, the entire purpose of the order, the purpose of the injunction is to benefit these plaintiffs, people like Mr. Garavanian. They are the ones that, interestingly enough— Well, what's interesting is Rule 71. Okay, I follow that. I follow that. But Rule 71 says non-parties can enforce these orders as if they were— not as if, using the processes available to parties. But if you parse that rule, you're still a non-party. And now you're saying, but we become a party because we can enforce it and all you're telling me is you are a non-party with certain potential rights, but the Clayton Act says you have to be a prevailing party. But the Clayton Act also encompassed and contemplates precisely what happened here, that you have not two mutually exclusive or separate actions, but they are viewed essentially, to use the words of the Supreme Court, cumulative. It was, as the U.S. v. Borden case found in 1954, designed to be cumulative, designed to be an ever-present threat. And here that was in reality. We had a case filed. We were the first filed in November of 2022. The government took four months thereafter, which is a long time in the world of mergers because mergers, the train is leaving the station, you have to act quickly. The cases were brought together back here in the District of Massachusetts. We did not know who was going to go first to trial. What if you filed second? What if you filed second? I know you didn't, but what if you did? That's a different case, Your Honor. But yes and no. Why, if everything happened the exact same way and you filed second? I think we would still be prevailing parties. And yet there's a problem, it seems to me, there's a sort of glomming-on problem there, which is because we're just going to be paying fees. Somebody will come in and say, oh, I can ride this train all the way to the fees, and the government's really going to end up doing it all. That doesn't seem like the best situation. And this is just the reverse of that situation, Your Honor. We filed first. The government filed four months later, essentially copying the complaint that we brought. But the government is under a statutory obligation to review every merger like this, right? Yes. Yes. But then also, as they've demonstrated, particularly in the – Well, just to finish, to see if my idea is right, then even though it's cleaner to talk about it when you file second, you file first because if the government comes in, I can ride that train maybe to fees, because you know there's a possibility that the government will. I mean, I guess I'm trying to think what creates the right incentive structures here, and I guess I'm not sure if this does. Fair enough. First of all, that's not for the court to decide respectfully. It's Congress. Congress has decided that they wanted to err on the side of having both a private attorney general and they amended this in 1976 to underscore this point. They wanted that threat out there because the government, as we've seen, imagine if this thing would have been off just one year and President Trump would have come in here and the new antitrust division. There are so many scenarios, particularly in the context of these airline mergers, where the government has been, frankly, not all that aggressive in imposing mergers, that you needed a private attorney general. And then we would need you and you'd get the fees. Right, right, but this is completely unfair and contrary to the statute to suggest that we file first, we do all the discovery, not knowing if we're going to have a joint trial, which is what all the parties were looking for at one point, whether we're going to go first, whether we're going to go second, wait until September of 23 to find out over our objection and the objection of the airlines that we're going to go second after the government. And then we have to come in to clean things up when it gets to appeal, right? Because now JetBlue is appealing the decision saying, oh, there's no, it's hypothetical consumers, it's a hypothetical market. Well, we don't have a hypothetical consumer, we have them sitting right here. We move in to seek summary judgment and what happens? Three days later, JetBlue puts up the white flag. We are responsible for this case from start to finish and it would be completely contrary. So can we go back to my first question because your time is about to run out. So just to say, oh, the statute, I mean, that's fine. But Canon, I mean, are you pressing that the catalyst theory should apply here? I'm not pressing it, but either the catalyst or the… I'll call it judicial imprimatur. Judicial imprimatur does either need to apply. In fact, the NFL case that we cite would suggest that imposing a requirement that we go to trial would be going beyond the claim now. However, as we lay out in our briefs under either scenario, under the imprimatur, there was an imprimatur, there was the result that was obtained. We were certainly, there was a shift with respect to the parties. And who are the parties here? It's not the attorneys. It's JetBlue and Spirit and the gentleman sitting in this court. Those are the parties. And as a result of the summary judgment order, as a result of all the litigation that cost that, we… So let me just clarify. You would say you win under either of those two rules, but you're not proposing a specific rule that it would make sense for us or test that it would make sense for us to adopt. No, that's why we put the court to do it in this particular case. I think that the clear language of the statute… Do you agree Buckhannon was talking generally about the rules that apply to fee-shifting statutes throughout the U.S. Code? There are many different… We've said that in a subsequent case. There are many different fee-shifting statutes. And, you know, the ones that district judges are used to, the 1988, all the permissive ones, those are all… This is a unique, unique statute with a very unique congressional intent. And the court would be… The result in this case is absurd in light of that history. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellee please introduce herself on the record to begin. Good morning. Elizabeth Wright from Cooley LLP on behalf of JetBlue Airways Corporation. May it please the court, appellants are seeking to be paid a windfall for a judgment that they didn't receive, that was issued to different plaintiffs, different parties, and a different lawsuit. In their own case, appellants received no judicial relief, and there was no determination of the merits. And given that reality, appellants are trying to co-opt the judgment from the DOJ case, a different action with different standards of proof, and claim that victory as their own. The court has already keyed in on this issue of the fact that there are different parties, and that's a key distinction here because the district court never even looked at the merits of appellants' case, and the injunction that was granted in the government case didn't involve the assessment of the appellants' merits in their own case. And that matters here because all that the Department of Justice and the states had to show was anti-competitive conduct. Private plaintiffs need to show more. They need to show the antitrust injury and that they would be injured in fact by the anti-competitive conduct. So private plaintiffs have never proven their case, and they can't import. Can you just enlighten me? I guess I forget. The summary judgment decision about the two plaintiffs who survived the private suit, what was it Judge Young said about the standing, that it remained a disputed fact for trial, or that they had it? Judge Young found with respect to those two plaintiffs that they had standing, but of course they didn't fully prove their case in that summary judgment. I'm no expert in antitrust, so what would happen at the trial that's different that maybe they would have won or maybe they wouldn't have? They would have had to prove to the judge, I guess, or whoever's deciding. What do they have to prove? They argued different relevant product markets and geographic markets, so they would have to prove an antitrust injury in those markets with respect to the individual plaintiffs. And the government's case is different because they only need to prove anti-competitive conduct. And this goes to what opposing counsel was talking about from U.S. v. Borden, in that the private plaintiffs do have the right to bring a case under the Clayton Act, but the Supreme Court recognized specifically in Borden that the incentives are different and that private plaintiffs are looking out for their own interests, whereas the Department of Justice is seeking to protect consumers more generally, public interest more generally. Can we avoid the question of which test applies here if we agree with you, or is that a necessary threshold question for this court to reach? I think that the court could affirm the district court without having to reach that question because under either the catalyst theory or Buckhannon, the imprimatur theory, there needs to have been a determination of the merits and there needs to be some judicial relief with respect to these parties, and they don't have that under either theory. And that, just to make sure I understand it, is they could have lost. Absolutely. They could have lost, and then we'd have to, if that's right, then to say that they are somehow a prevailing party, we have to take that basically, I mean, they're the only ones who filed a lawsuit, but there's nothing distinguishing them from any other person who's ever flown Spirit Airlines. I mean, that's just relying on that one line at the end. That's absolutely correct. I mean, this is for you, but that really doesn't distinguish anyone from anyone else. Yes, exactly. And taken to the logical conclusion, I think what appellants are arguing, any person off of the street could then come in and say that they were a prevailing party and try to enforce the judgment. How do you read the substantially prevailing? Is substantially prevailing more, less, or the same as prevailing party? So there's no clear case law on this, and the case law that has discussed it has said you could be substantially meaning, in the most part, right, I substantially won the case, or it could mean something different than that. What I just said was substantially true. We don't know exactly what substantially means. Either way, it doesn't matter here because they don't have it. Substantially true as in it's not true, or in the legal context, I lost but I still get fees? That would be. Mostly, right, substantially meaning what I said was substantially correct, right, not 100%, something short of that. And the other way to think of it, which I guess struck me all along as the way, would be you might not have won every claim with a relief to the full extent you asked for it, but you won enough relief given and compared to what you asked for that we can say you're more of a winner than a loser. So you substantially prevailed. Sure, and that would be a different case. Here there was no prevailing in any sense as the district court order said. Okay. And so they're just not, well, what do you think is the key word? I mean, we don't know. Again, one thing you've told us today is we don't know if they would have prevailed substantially or not at all. They might have lost. That's one point. It is then the other point based on what did happen. They are not a party because they did not bring the suit. They did not win the suit. I mean, they brought the suit, but they did not litigate the suit conclusion. They certainly did not win. And does Rule 71 have anything to do with this in your mind? I mean. It doesn't, Your Honor. And I would say in addition to keying in on the party point, both before and after the Buckhannon decision, courts, including the First Circuit, have focused on what the judicial relief was vis-a-vis the merits of the case, and the district court never reached the merits of Appellant's case. And so that is the nub of the issue. They can't adopt a judgment from a different case that had a different standard of proof and claim it as their own. I think looking specifically at the statute. Actually, before you do that, if we were going to use, I mean, I'm a little torn to say we have no test. If we take the judicial imprimatur test, can you walk through that with me and how it would apply here? So one is, was there a meaningful change? And the second is, does it have a judicial imprimatur? If you were to apply that here, can you walk through how that works for me? Yeah, absolutely. And Buckhannon has been applied, as you suggested, Judge O'Fraim, to a multitude of fee-shifting statutes, both statutes that have the prevailing party language, similar to the ADA, which was at issue in Buckhannon, as well as substantially prevailing. There's two elements, as you said. Here, again, I would go back to the key element being the judicial imprimatur because that goes to the merits of the case. To prevail, you have to have that success on the merits, and the appellants here didn't have it. And so the First Circuit, in looking at the judicial imprimatur standard, has considered a number of different factors, and the merits piece is the most important one. And that's both in, you see that in Smith v. Fitchburg, you see it in the Aronoff v. Napolitano case, as well as other cases. They lack that because the judgment was given to the United States. It was given to the United States and based on a different theory and different standard of proof. So appellants have never proven their case. I think the other piece on Buckhannon, as I said, it has been applied to a variety of statutes. It is the law of the land. The Clayton Act fee-shifting provision has not been amended since the Buckhannon decision was issued, and Congress saw fit to amend other statutes. I mean, what's unique? There seems to be some undercurrent of when it comes to fee-shifting, the Clayton Act is unique. I mean, I guess it's unique in the government, it's often the litigant, but, I mean, isn't all fee-shifting about encouraging private action? Like, why is this? What is special? I mean, yes, I can understand why here we wanted private action, but why is that any more special than anything else where we want private action or different? I don't think the Clayton Act is unique in its fee-shifting provision. I think it's very similar to a multitude of statutes in the federal code. With respect to the incentive structure that you raised, I would submit that a windfall here, they're seeking $34 million in attorney's fees for a case they never tried and never got a decision on. A windfall is not the right incentive. Appellants proceeded at their own risk by litigating. That's unique to mergers, I'm thinking about the windfall problem. So there are other kinds of Clayton Act cases, like a price-fixing case, and this case ended because it's just like, stop the merger. And there's no damages, really, the judge just stops the merger. In other cases, right, it would be still, there would still be a live case because presumably the plaintiff would have suffered injuries that would be not remediable by the government because they ran to them, not the government. And so in those cases, it seems like this problem doesn't arise. I mean, in the Clayton Act world, is this sort of problem that makes you kind of uneasy limited to mergers because the case kind of ended and they were dismissed as moot because there was nothing else for them to do? I think I understand the question and the concern. They were only seeking injunctive relief. They knew, and I see that my time is short, but they knew that the Department of Justice could file a lawsuit. They did file first. The Department of Justice did end up deciding to litigate to block the merger, and appellants continued to proceed at their own risk when litigating in parallel with DOJ. Because they could have stepped back when DOJ came in. Correct. Thank you. And that just wouldn't be in other contexts? The incentive structures are different in non-merger contexts? I think that that is probably right, but again, that is a different case, and appellants have not appealed the mootness decision here. They've conceded that. I'm just trying to figure out the extent of what we're deciding, and I'm just wondering there might be other cases where they could end up getting to have their trial, which they didn't get here. That could absolutely happen, yes. That is not this case here. They never proved their case. They never got a chance because the relief happened. That's the weirdness of this case. You just said they never got to prove their case, but they didn't get a chance to prove their case because when it was their day, the judge said, sorry, it's over. You kind of won, I guess, because there's nothing to do here. We can't give you the trial because it's moot now because you kind of won. I followed everything you said today, but that remains the part that makes me uneasy, I guess. Before you sit down, what do you want to say to that? I understand that and I see that, and I think that that is when they filed their case, they knew that that was the statutory scheme under which they were filing and that the government could come in and also try to block the same merger. They were proceeding knowing full well that that was a possibility, and they proceeded knowing full well that to get the fee shifting, they would need to show a judicial imprimatur or at least relief on the merits of their case. This is just the risk you take. You play it out in your position. It might work in your favor in the end, private people. It might not. If you want to risk it, risk it. It will be up to the judge down the road, and if it works out great for you, and if it doesn't, that's just the risk you took. I think that's the statutory scheme under which they're moving, and it's the scheme of Buckhannon and the Supreme Court precedent. Thank you. Thank you, Counsel. At this time, would Counsel for Garabanian et al. please reintroduce himself on the record? He has a two-minute rebuttal. Your Honor, you're exactly right, and you've touched on it. It's the incentive issue, and it's unique to merger cases because unlike the other antitrust cases where there's damages and you can have a contingency fee and you can play it out and you can get your reward that way, the only reason anyone is ever going to bother with these cases, the only way we're ever going to backstop the government, the only way we're going to provide the threat that Congress has expressly said they want from these private attorney generals is to provide, not if there's prevailing, not if you're the prevailing party, not if you go to trial, not if you have, you know, X, Y, and Z, NFL case makes clear you can't impose these requirements, just if you're substantially prevailing. But I guess the problem here is what is the answer to the question of, well, you knew this was the statutory scheme. You knew this could be a danger of proceeding in this type of case. We know we had to win. We had to win the argument. We had to get the relief that we were seeking. I don't bring many of these cases. Mr. Aliota does. I don't. I'm on the defense side. I've adjudicated these cases. I've been on every side of the equation in these cases. This was a good case. Mr. Aliota convinced me that this merger had to stop. What about the argument the government might have won but you might have lost? We know that that's always the case. We didn't know the government was going to intervene. For four months they didn't even intervene. But are you a prevailing party at this stage when the question is not clear to me or it's not clear that you, given what they tell me are different maybe elements and matters of proof, that you may not have been able to meet those? That's what they're saying today. That's not what they were saying, Your Honor. Well, what's your response to it? I'm not really interested in what that is. What is the response to that idea? In the record, back when we were deciding which case, when the district court was deciding which case was going to go first, you know what they said? They said, quote, if the government prevails, then the private plaintiffs will suffer no prejudice because the merger will be blocked, the relief that the private plaintiffs seek. That's what they told the court. And that remains true. That's why your case ended up getting dismissed. But is it possible that if we said you go first, you would have lost and then the government went second and they would have won? That's what they're saying. First of all, that's counterproductive at this point. That's completely speculative. I have every reason to believe we would have won. We had a great trial team together. We had the same evidence. But are there different elements? Are there different matters of proof that you have to prove that they don't? There is not many, Your Honor. Are there any? Nothing substantial there. And to answer your question about what the district court found on the summary judgment, that's up J237. Garabinian, Mr. Garabinian, who's here, and Meadmore, both fly Spirit Airlines regularly and allegedly will be harmed by the lower output and higher prices that they result from Spirit's acquisition by JetBlue. Each has standing to bring an antitrust claim because they are, quote, the type of persons the law intends to protect against the harm of which they complain. And then there's citations. That was critical because that's the issue that was raised on appeal filed by JetBlue following the injunction, which after we moved to intervene, moved for a motion for release, filed our own motion for summary judgment post the injunction, and attached all the declarations proving these elements, providing the individual market information, the individual defendant. That's when they put up the white flag and say we're done. And I've got to pass the court because you keep saying prevailing part. The statute is substantially prevailing. Did our litigation, did the lawsuit, substantially prevail? What more could we have done? In the win-loss, we won and JetBlue lost. And that, Congress says, needs to be incentivized. We need to be there. This is one year off, and you could have had a different administration, different antitrust department, and this case could have been withdrawn. They could have settled it. They did with all the other airline merger lawsuits, the DOJ and the airlines. You need us on that wall, basically. Congress has said so, and the only way to incentivize it in the unique context of merger cases is to do what Congress said and provide the attorney's fees. Okay, thank you. That's up for the district court to decide what's reasonable. That's a red herring. This court just needs to send this back with instruction that we were the Thank you. Your time is up. Thank you, Your Honor. That concludes argument in this case.